Case 14-5199, Public Citizen et al., Crossroads Grassroots Policy Strategies, Appellant v. Federal Election Commission. Mr. Kirby for the Appellant, and Ms. Klopach for the Appellee. Good morning. Good morning, Rob. May it please the Court, my client, Crossroads GPS, is entitled to intervene in this proceeding to defend itself against attack by the Public Citizen, and to defend the order of dismissal that it obtained from the Federal Election Commission dismissing the administrative complaint of Public Citizen. The District Court denied this intervention because it said the FEC is also defending that dismissal order and it can defend your interests. However, the FEC and its Office of General Counsel simply are not adequate representatives of Crossroads GPS. There are two basic reasons for that. First, their institutional interests and their statutory authorities and responsibilities are very, very different from those of Crossroads GPS, and that alone is a sufficient reason that they're not an adequate representative of ours. So the FEC says, well, look at the statutory language. Congress couldn't have anticipated any other party defendant other than the FEC, and that the District Court's power to do anything is very limited, so that any interest that you have, they argue, could be protected either when the District Court reverses the dismissal or, of course, you'll be happy if it affirms the dismissal. Let me take those two observations in reverse order, Your Honor. The District Court has the power under the statute to declare the dismissal order contrary to law, and presumably the District Court will give reasons for that ruling that would bind the FEC and would bind us as a practical matter and remand. Taking away that dismissal order takes away our victory before the Federal Election Commission and again exposes us to attack under public citizen's complaint, an attack that Congress sought to prevent by structuring the statute the way it did so you don't proceed on the complaint without a four-party vote, which requires a bipartisan vote.  Well, why didn't Congress provide for us to participate in the statute? Why did it not say anything about our participation? I'd like to get to that, but I just want to follow up on your answer. So is your position that if the District Court were to find that the dismissal was erroneous as a matter of law and then remand to the FEC, the FEC would have to proceed with an investigation of public citizen's charges or allegations against your? No, Your Honor. It would have to proceed in accordance with the declaration. The declaration would set aside the dismissal order so the case would again be a lot. But then the statute would kick back in. Well, except the District Court presumably gives reasons for its declaration. It's not going to say for secret reasons of myself. No, no, no, no, no. I understand, but I just need to understand what you think happens after that. What happens is you go back to the agency. The agency historically, and we think properly, views itself bound at the administrative level by the rulings that have been made by the court in a case in which it is a participant. And so it's going to proceed within the confines of what the court has said. But we have already put forward in our participation in our defense before the Federal Election Commission, we have put forth the strong reasons why the complaint against us should be dismissed. If the District Court now declares that those reasons are inadequate and the resulting dismissal is contrary to law, that is a very substantial prejudice to our position, certainly a practical prejudice and a legal prejudice. In your brief you say it could jeopardize your defense. Can you just spell that out a little bit? Well, we can't argue, we can't persuade the FEC to adopt positions anymore that the District Court has ruled out. All I need to understand, and I will ask the FEC attorney about this, but if the District Court were to rule that and take the extreme case that the dismissal was erroneous as a matter of law because crosswords were not meritorious. So it just wipes out your defense. What happens next? It goes back to the agency. Because it's 3-3 and the statute requires 4. But presumably, and I don't want to speak for the 3-3, but historically. I see. One member could change his book. Certainly. Or there could be somebody new appointed by the time we get around to it. Or one of the three that voted to dismiss, Your Honor, may say, and this is historically what's happened, we now are bound to take a different view of the law and under the new view of the law that we are bound to take, we're going to proceed with the investigation. What we are foreclosed from doing is persuading any member of the commission to adopt a legal principle that the District Court has rejected and declared contrary to the law. So our area of defense has been greatly curtailed at that point. Now, why didn't Congress say, and people in our position can intervene in the District Court action? The answer is because Congress legislates against the background policy of the federal rules of civil procedure, which provide for intervention in this kind of situation. And Congress has no need to address those kinds of issues because it's provided for in the statute. If Congress didn't want us to be able to intervene, the appropriate approach would be for Congress to say, and nobody else gets to intervene in this action. They didn't do that. Intervention is permissible, and we know that this Court, in fact, in at least one case, has authorized intervention to a party in exactly our situation in just this kind of case. The reason we need to intervene is because the Federal Election Commission simply is not an adequate representative of ours. That was the issue on which the District Court ruled. And in finding that they could, he said, they can adequately represent us. The District Court's reasoning was this. The precise issue to be decided by the Court is whether or not to affirm that dismissal order. Both parties would urge this Court to affirm that dismissal order. Therefore, since the FEC is arguing in favor of the dismissal order, it can represent prosecutors' DPS. Therefore, they're adequately represented. Therefore, they don't get to come in. That was the District Court's reasoning. The first problem of that is it doesn't acknowledge the very lenient standard for adequacy of representation, which, of course, is merely an exception. After under the first three parts of Rule 24a, you establish your right to come in. Then there's an exception, unless there's adequate representation. And the law is clear that that standard is minimal, it's lenient, and intervention is to be allowed if there is any basis for a reasonable doubt as to whether the existing litigants will adequately represent the parties seeking intervention. Here, the District Court didn't discuss any of that. And as I'll come back to in a minute, there are many reasonable doubts as to the adequacy of the FEC and its Office of General Counsel. Indeed, the District Court did not address this Court's series of precedents, holding that regulatory agencies typically are not adequate representatives of regulated entities when regulation is at issue. There's a series of cases discussed in our brief where this Court has made that point. And thirdly, he did not acknowledge or distinguish this Court's precedent that the mere fact of this kind of shared immediate litigation objective is not sufficient as a rule to establish adequacy of representation. And finally, no, actually there are two more points. Next, but an important point, the District Court did not fairly address the special circumstances that we face with this agency. The Federal Election Commission has six members. They're divided 3-3. This isn't any academic Tea Party kind of polite disagreement. They're fundamentally at odds with one another. Two of the dissenting commissioners are campaigning to have the District Court reverse the dismissal order, one through an op-ed in the New York Times and the other with a statement posted on the FEC website. And so you have the Office of General Counsel sitting there with its client evenly divided. We've got a litigation group that has no direction from its client and it has to get along with both of these contending forces in this case and prospectively. That Office of General Counsel has put out a public statement to which they say they still adhere, saying that they agree with the legal views of the dissenters and that all they're going to be able to argue, therefore, in this litigation is, well, yeah, we think the best view of the law would favor pursuing this complaint against Crossroads GPS, but, you know, these other guys, they are so unreasonable as to be outside the bounds of law. Now, lawyers say things like that, but that is not the most persuasive way to defend our interests, and we think that we're entitled to come in and defend our interests. All this is by way of, as you just said, a matter of rights. Yes. Well, it's also, Your Honor, although intervention by permission is discretionary, that's a legal discretion, this Court has made clear that it favors using that principle to get parties in a case where they really have a stake and where they can improve the adversary clash, and we think, by golly, in this case, if there is ever a situation in which sound discretion requires letting us in, letting a party in, this is that case, because we are now otherwise, the Court is going to be deciding based on representation by counsel who publicly says the better view supports the other side and who won't even complete the administrative record relied on by the three prevailing commissioners. They said our decision was informed by the first OGC memo, which includes facts and law. They said we want to attach that to our decision. OGC pulled that back and substituted a new memo. They're supported by three commissioners. So in the administrative record in the district court, this memorandum that the controlling commissioners relied on, say informed their decision, has not been provided by the district court, and the only way it's going to get it is if we come into the case and we pursue completing the record. Is your argument on intervention as of right, well, as to that argument, what is, in your view, the appropriate standard of review? The appropriate standard of review is, first of all, it's a legal error here. And secondly, to the extent that you're talking about an abuse of discretion, an abuse of discretion exists if the court doesn't apply the correct standards or goes outside the map. So we think this is so clearly wrong that whether you call it legal error because you didn't acknowledge the correct standards or whether you call it an abuse of discretion because you didn't apply the standards in a plausible way, nonetheless, this is something that this court can correct. And with regard to permissive intervention? That's clearly discretionary. Clearly discretionary. But again, I say discretion is a legal discretion. It does have its limits. And this court has been clear that the whole point of Rule 24 is to get before the court parties that are interested in the dispute and who can improve the clash. Now, clearly I think we satisfy that. Then you say, well, there's some reason not to let us in. Are they letting us in, open the doors to hundreds of other people coming in the same case and making them manageable? There's no discretionary reason. What about the potential for delay? There's no potential for delay. The judge here can't. Wouldn't that be a matter for the district court? I think in our situation where it's only the delay involved in letting one additional party in to what's basically a two-party case, I don't think the potential for delay is a significant consideration, particularly the only delay you might see. Does that mean that we should decide it? It's ordinarily a matter for the district court. You can decide it, Your Honor. The permissive intervention in this court on at least one occasion, I believe, has decided it, or you can send it back to the district court. You can say, we don't understand why you exercise your discretion this way. Please try again. Well, they didn't deal with that because he had stopped another consideration. He did, and we think mistakenly, and we think this court can say and should say we're entitled to intervene as a right, and therefore you don't have to worry about the discretionary issue either. My point is simply we are preserving both of those arguments. My question is going to be to you that it wasn't clear to me from your briefs whether or not you intend to raise new issues before the district court, and it seems at least in your argument this morning, and it's hinted at in your brief, that at least as to this report that's not part of the record, you will be arguing to the district court, won't you? Well, I suppose that might be a new issue, Your Honor. It's really a part of the stipulation between the parties was the administrative record would be filed. They filed something that omits something that the decision relied upon. Yes, we would intend to argue that as part of putting the administrative record before the court, that should happen. Now, if that's the only reason. But you're not putting a new claim before the court. We're not putting any new legal claim before the court. We would have additional arguments in support of existing issues. And this is where we get to the difference in our institutional perspective with the Office of General Counsel. We say that the First Amendment here requires that the legal standards be interpreted in an objective way, in a narrow way, in a precise way that doesn't impose any more burden on speech and association than Congress clearly intended. OGC is an enforcement body. They're prosecutors. They're not going to make those arguments. So although the same issue will be there, what are the legal standards? What does the law mean? How do you apply it to these facts? We're going to argue that law in a very different way than OGC is. Not a new claim. Certainly not a claim that requires a new jurisdictional basis or anything like that. Same art, same issues before the court, but a better adversary presentation and one that as the parties. It doesn't have to be better. It just has to be different. Well, you're right, Your Honor. It just has to be different, and I can guarantee you that. And we think it's going to be better. That's why we want to be able to do it. All right. Would you like to save? Well, you have no time, but we'll give you a couple of minutes. Thank you, Your Honor. Good morning. You may please start. My name is Erin Klopack, and I'm here on behalf of the Federal Election Commission. FECA's judicial review provision is the key to this case. As the discussion with Judge Rogers was making clear earlier, it is the reason that Crossroads lacks Article III standing, because the only issue the district court has jurisdiction to decide is whether an FEC administrative dismissal decision was legal. The court cannot mandate any relief, directly or indirectly, against Crossroads. It can't require any particular legal conclusion by the FEC, and this case thus presents no actual or imminent injury to Crossroads. Well, you heard counsel's argument. I mean, you've read the briefs, too. Don't you want to address those directly? Yes, absolutely. So the Supreme Court has made clear that in a situation like this where a party, the harm that's alleged is an anticipated future harm, the standard is that that harm must be certainly impending, and Crossroads does not nearly meet that standard here. The injuries that it asserts are speculations about what the FEC might do in the event that the case is remanded by the district court to the FEC. But as this Court's case law makes very clear, and as the Supreme Court's case law in the Aikens case makes very clear, even if the district court, under the exceedingly deferential standard of review that applies to review of FEC dismissal decisions under FECA, even if under that standard of review the court finds that the commission's administrative decision was contrary to law, all it can do is remand the matter to the agency. It can find that the particular reasons that the commissioners relied on in their statement in this case were contrary to law, but it can't require an alternative set of reasons on remand. And indeed, as the Supreme Court held in Aikens, the commission retains discretion to reach the same result for different reasons or to exercise its discretion. And so Crossroads is here speculating about what the FEC might do in the event the case is remanded, two levels of hypothetical speculation, which preclude standing in this case under the clearly applicable law. But the district court here didn't decide that they didn't have standing. It rejected their intervention on adequacy. Are you taking issue with what the court below found? Do you think the district court was wrong? Yeah. On the standing question, we do think the district court made a mistake. And I would highlight that even to the extent the court found standing, it found a very narrow issue that Crossroads had standing on, which was important to why it found that Crossroads lacked any right, because it found that given the narrow scope of FECA's judicial review provision, the only issue that Crossroads possibly could have an interest in is protecting itself in the event the matter was remanded from having to likely spend additional resources to urge a similar decision. And that finding by the district court itself was both speculative and erroneous, because it assumes that what happens on remand is that a respondent necessarily has to spend money and submit further submissions to the commission. Now, FECA gives administrative respondents a right to submit materials to the commission to provide its view of the law, and Crossroads certainly took advantage of that right during the administrative proceedings in that case. But that's a right that's afforded to administrative respondents. It's not an obligation that they're required to submit anything. And in this case, particularly given the amount of the volume of materials Crossroads already has submitted, it's far from clear that it would indeed need to submit anything. And I would take issue with opposing counsel suggested that historically in these cases, a matter is remanded and the commission feels compelled. He seemed to be suggesting that the commission feels compelled to reverse its initial decision and reach a different result. But, in fact, in the very few cases that actually are remanded, there have been a number of instances, including ones we cite in our brief, where the commission reconsiders the issues, issues, alternative reasoning, or even just a further explanation and receives no further submissions from a respondent. So the district court's assumption that Crossroads, even in the event this matter was remanded, would have to submit or would likely submit additional materials to the commission was speculation. It's not entirely clear that that would be true. So in your view, just the reversal of the dismissal would not be an injury? Not under the applicable precedence because the reversal of dismissal doesn't – the injuries that Crossroads has addressed that it's concerned about include an investigation by the commission, a determination that it might be a political committee, a finding that it broke the law. And none of those things are matters that can directly result from the litigation, the underlying litigation in this case. What did you say to Clinton versus the city of New York Supreme Court case? That case is entirely different from this case. In that case, the president had exercised the line-item veto and canceled – or, excuse me, canceled a tax exemption that resulted in the imposition of a multi-billion-dollar contingent liability on the city of New York. And the litigation – if New York lost litigation, that contingent liability would be reinstated. And what the court in that case was saying was that where an injury has already occurred, the possibility that a different result might occur after the challenge doesn't destroy that causation. But this is not that case because here what Crossroads is saying is, let's assume what might happen on remand and create causation by that speculation. So it's an entirely different situation. Well, wait a minute. Here's what the Supreme Court said. Even if the outcome of the second trial is speculative, the reversal causes a significant immediate injury by depriving the defendant of the benefit of a favorable final judgment. But I think the court went on to explain in that case that the benefit of the favorable final judgment was protecting the city of New York from the contingent liability that was already – Well, that's exactly what we're saying. No, in this case it's entirely different because Crossroads has, as it has admitted, has not been aggrieved at all. The status quo in this case is that there has been no finding that the complaint against Crossroads has been dismissed. The status quo in the city of New York case was that the city had a contingent liability that it was challenging. And the point was that, well, maybe some other outcome will still protect it, even though it has already suffered that harm. And the court rejected that hypothetical because it wouldn't destroy causation. I think the word destroy is really important because in this case there is no causation. Crossroads is trying to establish hypothetical circumstances that could create causation, whereas in the Clinton and in the Aikens case, too, the injury had already occurred. That's why the parties in those cases were plaintiffs that had already suffered an injury. And this is not that case. In fact, this court – It's not very – I see the point that you're making, but I don't understand why it isn't sufficient here where the court is saying, look, on remand this would be – or on revisiting it might be speculative, but they're being deprived of their victory. Because this – Here it's speculative as to what will happen back before the FEC. They're being deprived of the repose that they got from the dismissal. Well, the difference is that in Aikens there already was an injury. So the standard for establishing standing had already been satisfied. The party had been injured. It was subject to a contingent liability. And the fact that that liability might be extinguished through other circumstances didn't destroy the causation. In this case, Crossroads has not suffered any certainly impending injury, and it is attempting to satisfy these Article III standing requirements by alleging possible hypothetical circumstances that could occur down the road. How do you distinguish fun for animals? Well, in a number of ways, Your Honor. First of all, I would point out that a question was raised earlier about what the standard of review is for intervention of right. And the law is clear that where the finding of intervention of right is based on adequacy of representation, the standard of review is abuse of discretion. And the court in the fun for animals case made clear that that was the standard of review, but in that case there hadn't been an explanation by the district court for the court to defer to. And so even though the standard was abuse of discretion, it couldn't properly apply that standard in that case. But as far as standing goes, in that case, as distinct from FICA, there was the Endangered Species Act. A Mongolian agency was seeking to intervene in a case where the plaintiffs sought from the district court an order mandating that the agency list the animals in question as endangered, declare illegal existing import permits on those animals, and also enjoin issuance of further import. So the actual litigation in that case directly stood to cause harm to the plaintiffs. Again, that is not the case here, because FICA prevents the district court from mandating any relief against the agency, excuse me, against Crossroads. I see my time is running out, but if I may briefly address the issue of the administrative record that opposing counsel raised. Counsel's characterization of the administrative record situation is not accurate for a number of reasons. As a preliminary matter, we're talking about a staff legal analysis report that had been submitted to the commission and withdrawn. The documents in the joint appendix in this case make very clear the whole circumstances. And this court's decision in the Norris and Hershberg case make very clear that a staff recommendation is a type of document that is never included in an administrative record. In terms of what actually happened in this case, it's not correct to say that the general counsel's office deleted or removed any sort of document from the administrative record. We're talking about a privileged staff recommendation that was never included in the administrative record and has never been made public by the commission. The commissioners who attached the document to a statement of reasons actually said in a separate statement that they themselves agreed to have the document redacted before their statement was publicly released, based on disagreements among commissioners about whether the document was privileged. And ultimately, a vote among commissioners to release that document failed. So it didn't become publicly released. But that doesn't prevent the district court from reviewing the only issue that it needs to review in this case. Do you want us to rule on the privilege issue now up here? No, not at all. I'm just trying to correct assertions made by a privileged counsel. Okay, but they want to make an argument that the government doesn't, the FEC doesn't want to make, right? And you're just telling us this is a bad argument. No, I'm sorry. I'm responding to an accusation that a document that had been excluded from the administrative record, and I'm just trying to clarify based on the actual facts in the record that that's not an accurate characterization. Well, insofar as relevant to the adequacy of representation, there is a conflict of interest here between the two of you, correct? A conflict of interest between? The agency does not want the document introduced and may claim privilege for it. And the company would like to have it introduced. Well, under FECA's judicial review provision, the question for the district court is simply whether the commissioner's explanation for the dismissal decision was reasonable. And suppose there were a document not in the administrative record that reflected that one of the commissioners had been bribed with money and they wanted to get it into the record. Do you think the district court might find an exception, or at least they'd have an argument for an exception from the ordinary course of proceedings? That is certainly not the case here. Of course not. I don't understand how what you're saying can respond to the point being made, which is simply that they want to make an argument before the district court that you all don't want to make. Well, I think that really crystallizes the reason why Crossroads is not a proper party in the litigation, because the question the district court has to answer under the statutory provision that controls its jurisdiction in this case is whether the commission's dismissal decision was reasonable. And all the court can look at is what the commissioner's own explanation of their decision was. And the fact that Crossroads has additional arguments that it thinks supports its dismissal not only are not properly before the court, they're not relevant. They're not things that the court can consider in this case under this standard of review, because the question is what the commission said. In fact, under the applicable standard, the court can't even substitute its own rationale if it thinks that there's a different explanation that might better justify what the agency did. The only question before the court is whether the commission's explanation of its decision is reasonable. And under that standard, Crossroads cannot show any right to intervene. So that comes down to telling us that the argument they want to make is so far out of bounds that it's not a basis for saying that there's something for the district court to resolve. I think Crossroads is saying that. The opposing counsel is saying that himself. He's saying that he has arguments that are different than the arguments that the commission has made or the explanations the commission has made. And you're saying they're not cognizable arguments? Correct. That's correct. And you want us to resolve them? No, I think that it's not for the court to consider the arguments of Crossroads in this case, because Crossroads had an opportunity through the administrative process to make any arguments it wanted to make to the commission. The commission considered those arguments and then rendered its own decision. And the question before the district court under Section 30109A8 is the reasonability or the legality of the commission's explanation for its decision, not whether Crossroads might have some additional reasons that would further justify the commission's decision. Thank you very much. If there are no further questions, we just urge the court to affirm the district court's decision. Thank you. All right, counsel. Congress provided a mechanism by which Crossroads GPS could obtain early protection from a baseless complaint. Crossroads availed itself of that procedure and obtained the order Congress intended getting rid of the complaint that had been filed against it, achieving the benefit that we sought and that Congress intended for us to have. The present litigation seeks to strip us of that benefit. We are told we have no cognizance. We are told two things. Number one, we have no interest in preserving the benefit that we obtained through this procedure. And number two, we should rely for representation on the parties who argue that we have no interest. We submit that cannot be the law. We're told, well, if you've got a dismissal and overturning the dismissal doesn't dispose of the case because it could proceed on other grounds, then you don't have standing. Think of every case that's come up here where some defendant moved to dismiss a complaint for failure to state a claim and the district court granted that and there was an appeal. You are now going to be telling the defendants when they seek to defend the dismissal order, you don't have Article III standing because even if we reverse this dismissal, the district court might dismiss on some other ground or the plaintiff might give up or the witnesses might die. It just doesn't make sense. So, Your Honors, unless you have further questions, I propose to submit our argument. All right. Thank you. We'll take the case under advisement.
judges: Rogers, Brown, Ginsburg